Citation Nr: 1736735 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 12-32 771 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah


THE ISSUES

1. Entitlement to service connection for a bilateral hip disorder, claimed as osteoarthritis, to include as secondary to diabetes mellitus.

2. Entitlement to service connection for a lumbar spine disorder, claimed as osteoarthritis, to include as secondary to diabetes mellitus, and a bilateral hip disorder.

3. An evaluation in excess of 20 percent for diabetes mellitus type II with nonproliferative diabetic retinopathy of the right eye.


REPRESENTATION

Veteran represented by: James M. McElfresh II, Agent




WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Jeremy J. Olsen, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the U.S. Air Force from November 1966 to November 1970.

These matters come before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued in November 2010 and November 2015 by the Department of Veterans Affairs (VA) Regional Office (RO) in Salt Lake City, Utah. 

In February 2013, the Veteran testified at a videoconference Board hearing conducted before the undersigned Veterans Law Judge (VLJ). A transcript of the hearing has been associated with the claims file. 

The Veteran's appeal was previously remanded by the Board in June 2014 and February 2016. 

The issues of whether there was clear and unmistakable error with the assignment of the Veteran's effective date for diabetes mellitus type II, and whether or not new and material evidence has been received to reopen a claim for macular degeneration will be adjudicated in a separate decision, as a hearing was held and testimony taken on those issues by a separate Veteran's Law Judge, in July 2014. 38 C.F.R. 
§ 20.707 (2016).

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. 


FINDINGS OF FACT

1. The Veteran's bilateral hip arthritis is not related to his military service or caused or aggravated by a service-connected disability.

2. The Veteran's lumbar spine arthritis is not related to his military service or caused or aggravated by a service-connected disability.

3. For the entire period on appeal, the Veteran's type II diabetes mellitus has required insulin and a restricted diet, but not a medically-prescribed or suggested regulation of activities.


CONCLUSIONS OF LAW

1. The criteria for establishing service connection for bilateral hip arthritis have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103(a), 5107 (West 2014); 38 C.F.R. 
§§ 3.102, 3.303, 3.307, 3.309, 3.310 (2016).

2. The criteria for establishing service connection for lumbar spine arthritis have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103(a), 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2016).

3. The criteria for a rating in excess of 20 percent for diabetes mellitus have not been met or more nearly approximated at any time during the rating period on appeal. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107(b) (West 2014); 38 C.F.R. 
§§ 3.102, 3.159, 4.7, 4.119, Diagnostic Code 7913 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA's Duty to Notify and Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2016).

Under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of the following: (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. 

The VCAA notice requirements apply to all five elements of a service connection claim. The five elements are: 1) veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473, 484 (2006). VCAA notice must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In a claim for an increased evaluation, the VCAA requirement is generic notice: the type of evidence needed to substantiate the claim, which consists of evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

As concerns the Veteran's osteoarthritis claims, in a letter sent in September 2010, prior to the November 2010 rating decision on appeal, the Veteran was advised of the evidence and information necessary to substantiate his underlying claims, as well as his and VA's respective responsibilities in obtaining such evidence and information. As required, the letter advised him of the information and evidence necessary to establish a disability rating and an effective date in accordance with Dingess, supra. 

As for the claim for an increased rating for diabetes mellitus, the Veteran filed the claim as a fully developed claim (FDC) using VA Form 21-526EZ. Under the framework for a FDC, a claim is submitted in a "fully developed" status, limiting the need for further development by VA. When filing a FDC, a Veteran submits all evidence relevant and pertinent to his or her claim other than service treatment records and treatment records from VA medical centers, which will be obtained by VA. Under certain circumstances, additional development, including obtaining additional records and providing the Veteran with a VA medical examination, may still be required prior to the adjudication of the claim. See VA Form 21-526EZ.

The FDC application form provides information on how VA assigns disability ratings in the event that service connection is established, and of the Veteran's and VA's respective duties for obtaining evidence. The notice also provides information on how VA assigns disability ratings. Thus, the notice that is part of the claims form submitted by the Veteran has satisfied VA's duty to notify. 

Thus, concerning all claims currently on appeal, the Board finds that VA has undoubtedly fulfilled its duty to notify. 

Under 38 U.S.C.A. § 5103A, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate a claim. Here, the Veteran's service treatment records and service personnel records have been obtained. Post-service VA and private treatment records have also been obtained.

The Veteran was also provided an opportunity to set forth his contentions during a videoconference hearing in February 2013. (The Board notes that, in his March 2016 substantive appeal, the Veteran expressly declined a hearing for the issue of an increased rating for his diabetes mellitus.) The RO Decision Review Officer or VLJ who chairs a hearing must fulfill two duties: (1) to fully explain the issues, and (2) to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010); 38 C.F.R. § 3.103 (c)(2). Here, during the February 2013 hearing, the undersigned identified the issues on appeal. In addition, information was solicited regarding outstanding evidence and why the Veteran believed he was entitled to service connection for his hips and back. Therefore, not only were the issues "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim" were also fully explained. See Bryant, 23 Vet. App. at 497. To the extent that outstanding evidence was identified, the Board subsequently remanded the appeal in June 2014 in order to obtain this evidence, thereby fulfilling the duties outlined above.

The prior remand instructions were substantially complied with for the Veteran's claim. The June 2014 Board remand instructions stated that the Veteran be allowed the opportunity to allow authorization for private medical records, for updated VA records to be associated with the claims file, and to obtain an addendum medical opinion. The Veteran was sent correspondence seeking authorization of private medical records in July 2014, but he failed to respond. The Board notes that a claimant is responsible for cooperating with VA in the development of a claim. See Woods v. Gober, 14 Vet. App. 214, 224 (2000). In April 2015, medical opinions regarding the Veteran's bilateral hip arthritis and lumbar spine arthritis were obtained. 

Then, in February 2016, the Board remanded again for an addendum opinion which addressed specific evidence on file. Such an opinion was rendered in July 2016 and associated with the claims file. Accordingly, the Board finds that there has been substantial compliance with all prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)).

Furthermore, the April 2015 examinations and the July 2016 addendum are all deemed adequate, as the examination reports show that the examiner considered the Veteran's relevant history, reviewed relevant physical examinations with testing, addressed the evidence as instructed and, most importantly, provided reasoned analysis to support the medical opinion provided. See Stefl v. Nicholson, 21 Vet. App. 120, 123-24 (2007); Barr v. Nicholson, 21 Vet. App. 303, 311-12 (2007) (holding that VA must ensure that the examination provided is adequate). 

As VA satisfied its duties to notify and assist the Veteran, the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. § 5103(a), § 5103A, or 38 C.F.R. § 3.159, and that the Veteran will not be prejudiced as a result of the Board's adjudication of his claims. 

Service Connection - Legal Criteria

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. 1110, 1131 (West 2002); 38 C.F.R. 3.303(a) (2016).

Establishing entitlement to service connection for a disability on a direct basis generally requires evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

In addition to the regulations for establishing service connection cited above, in order to establish entitlement to service connection on a secondary basis, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) evidence, generally medical, establishing a nexus (i.e., a link) between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998). Service connection is warranted for a disability which is aggravated by, proximately due to, or the result of a service-connected disease or injury. 38 C.F.R. § 3.310 (2015). Any additional impairment of earning capacity resulting from an already service-connected condition, regardless of whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition, should also be compensated. Allen v. Brown, 7 Vet. App. 439 (1995). When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. Id. The Board notes that 38 C.F.R. § 3.310 was amended effective October 10, 2006. Under the revised § 3.310(b) (the existing provision at 38 C.F.R. § 3.310(b) was moved to sub-section (c)), any increase in severity of a nonservice-connected disease or injury proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the disease, will be service-connected. As the Veteran filed his claim in 2010, the amendment is applicable to the current claim.

Finally, in some cases, service connection may also be established under 38 C.F.R. § 3.303(b) by (a) evidence of (i) a chronic disease shown as such in service (or within an applicable presumptive period under 38 C.F.R. § 3.307) and (ii) subsequent manifestations of the same chronic disease, or (b) if the fact of chronicity in service in not adequately supported, by evidence of continuity of symptomatology. However, the U.S. Court of Appeals for the Federal Circuit has held that the provisions of 38 C.F.R. § 3.303(b) relating to continuity of symptomatology can be applied only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Because the Veteran is diagnosed with arthritis, which is on the list of § 3.309(a) conditions, the Board will further consider whether service connection is warranted based upon continuity of symptomatology.

The Board must consider all the evidence of record and make appropriate determinations of competence, credibility, and weight. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). "The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant." Id. at 367.

Increased Rating - Legal Criteria

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects the ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10 (2016). 

When all the evidence is assembled, the Board is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3 (2016). If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2016). Furthermore, when it is not possible to separate the effects of the service-connected disability from a nonservice-connected condition, such signs and symptoms must be attributed to the service-connected disability. Mittleider v. West, 11 Vet. App. 181, 182 (1998).

Additionally, the evaluation of the same disability under several Diagnostic Codes, known as pyramiding, must be avoided. Separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

The Veteran was previously awarded service connection and assigned an initial disability rating for diabetes mellitus, and an appeal of the initial rating is not before the Board; rather the Veteran seeks an increased rating. On a claim for increased rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found; such separate disability ratings are known as staged ratings. The U.S. Court of Appeals for Veterans Claims (Court) extended entitlement to staged ratings to claims for increased disability ratings where "the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings." Hart v. Mansfield, 21 Vet. App. 505, 511 (2007). 

In the November 2015 decision on appeal, the Veteran was denied an increased evaluation for diabetes mellitus, which is currently rated as 20 percent disabling effective July 27, 2009, under 38 C.F.R. § 4.119, Diagnostic Code 7913. Under this Code, a 20 percent rating is warranted when the diabetes requires the use of insulin or oral hypoglycemic agent, and a restricted diet. A 40 percent rating is warranted for diabetes that requires insulin, a restricted diet, and regulation of activities, and a 60 percent rating is afforded on evidence of diabetes that requires insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated. Finally, a total (i.e., a 100 percent) rating is awarded when diabetes requires more than one daily injection of insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated. 38 C.F.R. § 4.119 (2016).

Relevant to the Veteran's claim, the "regulation of activities" has been defined as the situation where a veteran has been prescribed or advised to avoid strenuous occupational and recreational activities. See 61 Fed. Reg. 20,440, 20,446 (May 7, 1996) (defining "regulation of activities," as used in DC 7913). Medical evidence is required to show that occupational and recreational activities have been restricted. Camacho v. Nicholson, 21 Vet. App. 360 (2007).

Complications of diabetes are evaluated separately unless they are part of the criteria used to support a 100 percent rating. Noncompensable complications are deemed part of the diabetic process under DC 7913. 38 C.F.R. § 4.119, DC 7913, Note (1) (2016).


Facts and Analysis - Bilateral Hips and Lumbar Spine

The Veteran underwent a VA hip and thigh conditions examination in April 2015. The examiner diagnosed the Veteran with bilateral osteoarthritis of the hip, noting that the date of diagnosis was February 2012. In April 2015 the Veteran also underwent a back (thoracolumbar spine) conditions examination. The examiner diagnosed the Veteran with degenerative arthritis of the spine, lumbar spine spondylosis, and degenerative disc disease of the lumbar spine. Thus, the Veteran suffers from both a bilateral hip disability, and a lumbar spine disability, which fulfills the first element of service connection for these issues. 

The Veteran testified in February 2013 that pursuant to his work as a bomb crew member in-service he engaged in heavy work, lifting, and used heavy machinery. The Veteran's representative also stated that a service treatment record from April 1970 shows that the Veteran sought treatment, with complaints to his entire body, and specifically noted that he had back pain. The Board notes the April 1970 service treatment record which shows groin pain, pain when sitting, and abdominal pain; however, the Board does not see a notation for back pain. A July 1968 Quality Review report of the Veteran's work in the munitions maintenance squadron shows the Veteran was responsible for uncrating, inspecting, and assembling bombs, which included the operation of heavy equipment. The Veteran's reports of heaving lifting and operating heavy machinery, combined with the quality review report, fulfill the second element for service connection, that the Veteran experienced an in-service injury for both issues on appeal. 

The Veteran has not asserted that his bilateral hip arthritis began during service or even within a year of separation. At his February 2013 Board hearing, the Veteran stated that his bilateral hip pain and lumbar spine pain began in approximately 1995, approximately twenty-five years after service. At the April 2015 examination, he stated that his in-service back pain resolved when he stopped working with the munitions squadron. 

In an August 2016 statement, the Veteran's representative indicated that the condition had a 2005 onset and requested that the Veteran be granted service connection as of that date. The Board notes, parenthetically, that the effective date of an award of service connection is assigned not based on the date the disability appeared or the date of the earliest medical evidence demonstrating the existence of such disability and a causal connection to service or a service-connected disability; rather, the effective date is assigned based on consideration of the date that the application upon which service connection was eventually awarded was received by VA. See Lalonde v. West, 12 Vet. App. 377, 382 (1999).

As arthritis is a "chronic disease" listed under 38 C.F.R. § 3.309(a), 38 C.F.R. 
§ 3.303(b) must be considered. See Walker, supra. However, as symptoms of bilateral hip and lumbar spine arthritis were not noted, that is, observed, in service, and as there is no competent evidence either contemporaneous with or after service that symptoms of arthritis were noted during service, and as the Veteran has not asserted otherwise, the principles of service connection pertaining to chronicity and continuity of symptomatology under 38 C.F.R. § 3.303(b) do not apply. 

Furthermore, as for presumptive service connection for bilateral hip, or lumbar spine arthritis as a chronic disease, the preponderance of the evidence establishes the arthritis did not manifest to a compensable degree within the one-year presumptive period after discharge from service in November 1970. 

The Veteran essentially argues that the heavy lifting and the time he spent working with heavy machinery in service is the nexus to his current bilateral hip, and lumbar spine arthritis. The Veteran alternatively argues that his service-connected diabetes caused or aggravated his osteoarthritis. 

The Veteran proposed at his Board hearing the theory of whole body vibration from using heavy machinery, and supplied medical literature explaining the disease process. The Board notes the copious amount of medical literature supplied by the Veteran and his representative over the course of the appeal; however since the literature does not specifically discuss the Veteran's in-service circumstances, and fails to make specific reference to the Veteran, they hold negligible probative value. See Mattern v. West, 12 Vet. App. 222, 228 (1999). 
In addition to the Veteran's own positive nexus contentions, a private medical provider has provided a positive nexus opinion. A February 2013 medical report from Dr. R.G.D. confirmed that the Veteran had been diagnosed with severe osteoarthritis of his hips, as well as degenerative disc disease of the lumbar spine. The physician stated that based on radiographic evidence, the Veteran's hips were severely arthritic and experienced secondary degenerative changes suggesting that severe arthritis had been present for decades. The physician stated that the Veteran had lived with pain for a very long time, and was barely able to walk prior to his bilateral hip arthroplasty. The physician concluded, "with a reasonable degree of medical certainty that it is quite possible, if not probable that the rigorous duties" performed by the Veteran during his military service "have caused and/or contributed to the cause of his conditions."

In February 2012 the Veteran underwent a back (thoracolumbar spine) examination at VA. In reviewing the Veteran's medical history, the examiner specifically noted that the Veteran was contending that his heavy lifting of bombs while in-service led to his arthritis. The examiner made note of the Veteran's post-service career working within the police department. The examiner reviewed the Veteran's lumbar spine: flare-ups, range of motion testing, pain and muscle spasms, muscle strength testing, reflex exam, sensory exam, symptoms relating to radiculopathy, and the Veteran's use of assistive devices. In February 2012 the Veteran underwent a VA hip and thigh conditions examination. The examiner noted the same medical history as that given at the back conditions examination and similarly examined the Veteran's bilateral hip arthritis. 

The examiner concluded that both the Veteran's lumbar spine and bilateral hip arthritis was less likely than not incurred in or caused by the Veteran's service. The examiner specifically noted that he found the Veteran's assertions to be credible, and that the causation analysis was based on medical principles. The examiner reviewed the Veteran's service and noted that he did not have a diagnosis of arthritis in his back or hips while in-service, and that there was no evidence of continuity of arthritis to the hips or back in the years following service. The examiner noted that the first diagnosis of the Veteran's bilateral hip and back arthritis was in 2001, based on the Veteran's subjective history. 
The examiner further noted, that given the Veteran's age he likely did have some arthritis to his hips and back. The examiner stated that "any arthritis of the hips and back at this time [is] not caused by or related to repetitive lifting of munitions while in service but rather is the result of the natural aging process and genetics." The examiner noted a National Health and Nutrition Examination survey which found that osteoarthritis occurs in .1 percent of the population aged 25 to 34, and that it occurs in over 80 percent of people over the age of 55. The examiner further added that, while it may seem like common sense that repetitive lifting of heavy objects over forty years caused or contributed to the Veteran's current condition, there is no medical evidence to support that contention. 

In April 2015, the Veteran underwent another hip and thigh conditions VA examination, and another VA back examination. In reviewing the Veteran's medical history, the examiner noted the Veteran's in-service duties as a bomb loader and that the Veteran had some back pain, but then when he switched his MOS to military police his back pain resolved. The examiner noted that there was no indication in the service treatment records of any diagnosis or treatment of back or hip disorders while in-service, and the Veteran did not relate any such history. The Veteran reaffirmed that he did not have any hip or back pain until about 2005. 

The examiner noted the June 2013 Board remand's analysis of Dr. R.G.D. but was unable to find the exact document referenced. The examiner also reviewed a lay journal article entitled "Arthritis Today", which noted an increased prevalence of arthritis in obese diabetics. The examiner noted that the Veteran's diabetes diagnosis dates to the late 1990s. He noted that after reviewing the Veteran's osteoarthritis that he first had in 2005, it is likely that the Veteran's osteoarthritis began well before his diabetes mellitus. In review of Dr. R.G.D.'s opinion, the examiner found it speculative, and that it would be hard to postulate that it was present at the time of military service, and that it likely began some time before the 1990's onset of diabetes. 

The examiner further added that the Veteran is not obese, and therefore based on the Veteran's relatively recent onset of diabetes, and his history of normal weight, the Veteran's diabetes did not contribute, or worsen the Veteran's osteoarthritis. The examiner noted that the two main risk factors for osteoarthritis are age and obesity. The examiner noted that a traumatic injury can cause osteoarthritis, but there was no evidence for that finding with the Veteran. In conclusion, the examiner stated that it was less likely than not that the Veteran's osteoarthritis manifested during, or as a result of active military service, and that it was less likely than not that Veteran's osteoarthritis was either caused by or aggravated by his diabetes. 

In response to the Board's February 2016 remand, the Veteran's claims file was returned to the April 2015 examiner for an addendum opinion. The examiner was asked to specifically address Dr. R.G.D.'s February 2013 opinion concerning the Veteran's osteoarthritis.

In July 2016, the April 2015 examiner provided such an opinion. Therein, the VA examiner indicated that he had reviewed Dr. R.G.D.'s 2013 letter. The VA examiner reiterated his previous conclusion that it was less likely than not that the Veteran's osteoarthritis was related to service, to include the heavy lifting he performed in the munitions maintenance squadron during the uncrating, inspecting, and assembling of bombs. 

In support of this conclusion, he explained that the Veteran repeatedly told treating physicians that his arthritis had a 2005 onset, which was 45 years following discharge from service. The VA examiner noted that it would be speculative to suggest, as Dr. R.G.D. did, that the established orthopaedic impairments experienced by the Veteran-which were addressed surgically by Dr. R.G.D. with total hip arthroplasty in 2012-had its onset some 40 years prior. The Veteran was already in his sixties when his osteoarthritis treatment began, which is an age at which osteoarthritis and degenerative disc disease were common. 

Based on the evidence above, the Board finds that the Veteran's claims for service connection must be denied. The February 2013 opinion from Dr. R.G.D. must be assigned little, if any, probative value. While the doctor noted the Veteran's in-service heavy lifting, and that his severe arthritis that had existed for decades, the opinion offered minimal rationale and reasoning. Furthermore, the specific language used by the examiner, indicating that a nexus was "with a reasonable degree of medical certainty quite possible, if not probable" is too speculative to be probative in this matter. The Board notes that medical opinions that are speculative, general, or inconclusive in nature do not provide a sufficient basis upon which to support a claim. See Beausoleil v. Brown, 8 Vet. App. 459, 463 (1996) (a generic statement about the possibility of a link is too general and inconclusive); Obert v. Brown, 5 Vet. App. 30, 33 (1993); see also Hood v. Shinseki, 23 Vet. App. 295, 298-99 (2009) (medical opinion is speculative when it uses equivocal language such as "could" or "might," without any other rationale or supporting data).

In contrast, the Board finds the opinions of the February 2012 examiner and the April 2015 examiner, to include his July 2016 addendum, to be of much higher probative value. The medical opinions contained not only clear conclusions with supporting data, but also reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl, supra. The examiners incorporated the Veteran's medical history, his in-service activity and post-service complaints, reviewed the lay evidence submitted on behalf of the Veteran, and noted medical literature used to determine their conclusion. The examiners both explained in great detail their determinations of the etiologies of the Veteran's conditions. The April 2015 opinion also successfully discussed secondary service connection, and offered a full explanation as to why the Veteran's diabetes would not cause or aggravate his arthritis. 

Importantly, the examiners also fully discussed the Veteran's lay assertions in their analyses. Dalton v. Nicholson, 21 Vet. App. 23 (2007) (holding that a VA opinion was inadequate where the examiner did not comment on the Veteran's report of in-service injury). The Board notes that the examiners did not specifically discuss the whole body vibration theory, however there is no requirement that the examiner discuss all important evidence, even favorable evidence. Roberson v. Shinseki, 22 Vet. App. 358, 366 (2009). For these reasons, the Board finds that the VA examiners' opinions are of greater probative value. See Prejean v. West, 13 Vet. App. 444 (2000) (factors for assessing the probative value of a medical opinion include the review of the claims file and thoroughness and detail of the opinion). 

Finally, while the Veteran and his representative may believe that his bilateral hip and lumbar spine arthritis is related to his active service, neither has provided enough probative evidence to support a claim of service connection. The Board acknowledges that lay evidence may be sufficient to establish a causal relationship between a current disability and service. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Here, however, as the medical question in issue is complex in nature, the Board finds that the Veteran's opinion, and that of his representative, as to the etiology of bilateral hip and lumbar spine arthritis does not create the requisite nexus needed for direct or secondary service connection.

While pain, trouble walking, problems bending, and unsteady gait are capable of lay observation, arthritis is not capable of lay observation and is not a simple medical condition. See Jandreau, at 1377, n. 4. Arthritis and the determination of an etiology for arthritis is a complex medical question requiring X-ray interpretation, knowledge of the musculoskeletal system and joint functioning; it is not capable of lay diagnosis and as such, the Board finds that the Veteran is not competent to diagnose arthritis or provide the requisite nexus opinion for his hip or lumbar spine arthritis. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). Furthermore, the medical evidence of record fails to provide the requisite positive opinion regarding the Veteran's bilateral hip and lumbar spine arthritis. 
 
Consequently, the Veteran's claim for secondary service for his lumbar spine arthritis, secondary to his bilateral hip arthritis must be denied. As there is no legal basis upon which to award service connection for a disability that is claimed as secondary to a disability that is not service connected, the Veteran's claim for service connection for lumbar spine arthritis secondary to bilateral hip arthritis, must thus be denied as a matter of law. See 38 C.F.R. § 3.310; see also Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (where the law and not the evidence is dispositive, the Board should deny the claim based on a lack of legal merit).




Facts and Analysis - Diabetes Mellitus II

After reviewing the entire claims file, the Board finds that the Veteran's diabetes mellitus has at no point during the period on appeal met the criteria for a rating in excess of 20 percent disabling. Specifically, throughout the appeal period, while the Veteran's diabetes mellitus has required the use of insulin and restricted diet, there has been no medically-prescribed or suggested regulation of activities. 
In April 2015, the Veteran was seen at VA for a checkup. At that time, it was noted that his activities of daily living were not affected by his diabetes. 

In his July 2015 application for an increased rating, the Veteran indicated that his diabetes had worsened, in that he was administering insulin to treat the condition. He also submitted copies of prescriptions for insulin, as well. VA treatment records from this time period show that the Veteran was admitted into the hospital following an illness, was administered dialysis on four occasions, and started on insulin. 

In August 2015, the Veteran underwent a VA examination. At that time, it was noted that he had been diagnosed with diabetes mellitus, type II, in 1995. He did not require any hospitalizations due to his diabetes, and treated the condition with prescribed insulin, injected once per day. The examiner found that there were no restrictions placed on his activities, as part of medical management of the condition. The Veteran visited his diabetic care provider for episodes of ketoacidosis or hypoglycemic reactions less than 2 times per month, and had not been hospitalized for such in the past year. There was no unintentional weight loss, but some loss of strength, attributable to the Veteran's diabetes. Complications such as diabetic nephropathy or renal dysfunction were noted, in that the Veteran had an infection which caused sepsis; this sepsis combined with the diabetes mellitus caused acute renal failure. 

In his December 2015 Notice of Disagreement, the Veteran indicated that he used insulin to treat his diabetes, had a restricted diet, and that there was a regulation of activities. 

In a January 2016 statement to VA, the Veteran indicated that he believed an increased rating was warranted, as the record showed that he used insulin and had a restricted diet. He also indicated that there was a "regulation of normal activities". 

A March 2016 VA treatment note indicated that the Veteran's diabetes mellitus was treated with insulin injections. 

Again, in order to award a rating of greater than 20 percent, the evidence must show that treatment of diabetes requires insulin, a restricted diet, and regulation of activities. 38 C.F.R. § 4.119. The Court has determined that, due to the use of the word "and" in the criteria for a higher 40 percent rating under 7913, all criteria, including the regulation of activities, must be met to establish entitlement to a 40 percent rating. Camacho, supra. As noted above, the term "regulation of activities" has a specialized meaning in this context, and refers to a prescription or advisement to avoid strenuous activities. Here, there is simply no indication, other than the Veteran's contentions, that he has been told by a physician to avoid regulate his activities in order to control his diabetes mellitus symptoms.

The Board has carefully reviewed and considered the Veteran's statements regarding the severity of his diagnosed diabetes mellitus type II. It acknowledges that the Veteran, in advancing this appeal, believes that his disability has been more severe than the assigned rating reflects. Moreover, the Veteran is competent to report observable symptoms. Layno v. Brown, 6 Vet. App. 465 (1994). In this case, however, the competent medical evidence offering detailed specific specialized determinations pertinent to the rating criteria are the most probative evidence with regard to evaluating the pertinent symptoms for the disability on appeal; the medical evidence also contemplates the Veteran's descriptions of symptoms. The lay testimony has been considered together with the probative medical evidence clinically evaluating the severity of the pertinent disability symptoms. 

The Board has considered whether staged ratings under Hart, supra, are appropriate for the Veteran's diabetes mellitus, but finds that his symptomatology has been stable throughout the appeal period. Therefore, assigning staged ratings for such disability is not warranted.
Finally, the Board must assign separate ratings for any compensable complications of the Veteran's service-connected diabetes mellitus, type II. All noncompensable complications are considered part of the diabetic process. 38 C.F.R. § 4.119, Diagnostic Code 7913, Note (1). However, the Board finds that the evidence of record does not support compensable evaluations for either the Veteran's erectile dysfunction or diabetic retinopathy. 

The Board notes that the Veteran has been awarded a separate disability rating for erectile dysfunction. As the Veteran is separately rated for such and has not appealed any decisions on that complication to the Board, no consideration of his erectile dysfunction is warranted as part of the current claim for a higher rating for diabetes mellitus.

In addition, the Board notes that the Veteran's diabetes mellitus has been characterized as including nonproliferative diabetic retinopathy of the right eye. However, upon examination in August 2015, it was determined that there was no diabetic retinopathy present in either of the Veteran's eyes. In addition, there is no evidence of record for the period on appeal that shows a diagnosis of such. Thus, a separate rating is not warranted and the Board finds that the preponderance of the evidence is against the Veteran's claim for a rating in excess of 20 percent for his type II diabetes mellitus for the appeal period. 

In conclusion, in reaching each of the foregoing conclusions concerning the Veteran's osteoarthritis and diabetes mellitus claims, the Board has taken into consideration the doctrine of reasonable doubt. 38 U.S.C.A. § 5107(b). However, as the preponderance of the evidence is against the Veteran's claims, the doctrine is not for application. See also, e.g., Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Entitlement to service connection for a bilateral hip disorder, claimed as osteoarthritis is denied.

Entitlement to service connection for a lumbar spine disorder, claimed as osteoarthritis, to include as secondary to a bilateral hip disorder is denied.

A rating in excess of 20 percent for type II diabetes mellitus with erectile dysfunction is denied.




____________________________________________
K. GIELOW
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs